OCTOBER AND NOVEMBER TERM, 1881, No. 223.

## Bailey *et al. versus* Niles.

1. The plaintiff, Niles, being in debt and needing security, signed a contract with defendants, transferring to them certain leases, and setting forth: " The above sale, transfer, sale, or delivery, is made by first party to said second parties for the purpose of securing them against loss or damage from their guaranteeing or securing the said Niles, or securing William F. Porter from loss by bailing said Niles. In consideration of the above the said second parties agree to secure William F. Porter against loss from his becoming bail or security to said Niles to the amount of three thousand five hundred dollars ($3500)." Porter did not sign the contract. At the same time plaintiff executed a mortgage to defendants reciting the contract. Porter then signed notes for the plaintiff to that amount, which he was subsequently compelled to pay, and plaintiff assigned to him all plaintiff's interest in the contract. *Held,* in an action by plaintiff to the use of Porter, that neither want of definiteness in the description of the interests in the leases, nor the fact that the interests transferred to the defendants subsequently proved to be of but little value, would exempt defendants from the obligation to indemnify Porter, as expressed in the contract.

2. The fact that Porter was not a party to the writing ought not to avail defendants.

3. It was not error to charge that the case is analogous to that of an agent who, either by prior parol authority or by subsequent parol notification, enters into a contract in his own name, under his own seal, for the benefit of his principal, in which the action would be maintained in the name of the agent for the benefit of the principal, and the defendants, if they knew the contract was for the benefit of the principal, could take no other defence than such as would be available against such principal.

4. If, on the faith of the agreement executed by the defendants, Porter advanced the money, they could not as against him set up that the consideration was worthless or had not been received.

5. Any doubt as to the competency of a witness permitted to testify is cured by uncontradicted evidence of the facts to which he testified subsequently received by admission.

ERROR to the Court of Common Pleas of *Mercer County.*

Covenant by Austin Niles, use of William F. Porter, against T. S. Bailey, Daniel Perrine, E. X. Giebner, and E. G. Eberman, to recover the amount of certain losses incurred by Porter as security for Niles.

Pleas, covenants performed *absque hoc,* with leave, etc.

The instrument sued upon was executed March 22d, 1876, by the plaintiff, Niles, of the first part and the defendants

[Bailey *et al. v.* Niles.]

of the second part, and was sealed and signed by all of the
parties, but was not witnessed. By it Niles sold, transferred,
and assigned a number of coal, oil, and sand leases and other
interests in real estate to the defendants. It then proceeded
as follows:

" The above sale, transfer, sale, or delivery, is made by first
party to said second parties for the purpose of securing them
against loss or damage from their guaranteeing or securing
the said Niles, or securing William F. Porter from loss by
bailing said Niles. In consideration of the above the said
second parties agree to secure William F. Porter against
loss from his becoming bail or security to said Niles to the
amount of three thousand five hundred dollars ($3500) over
and above two thousand and fifty dollars ($2050); and it is
agreed by said second parties that if said Niles shall at any
time discharge said second parties from any and all liabili-
ties on this contract, or that he shall secure them against
any loss or damage from their thus guaranteeing said Wil-
liam F. Porter against loss, then the said second parties
agree to transfer and redeliver to said Niles all the afore-
mentioned property, oil, coal, sand leases and articles for
the purchase of land, except one-half of his interest in arti-
cles for purchase of lands in Worth and Sandy Lake town-
ships, being about 2000 acres, and one-half of his interest in
the oil leases at Raymilton and on Mill Creek, which said in-
terest is to be and remain said second parties' absolutely, or
their assigns."

Niles, by an indorsed instrument under seal, assigned and
transferred, June 23d, 1880, all his right, title, and interest
in the contract to Porter.

At the date of the above contract Niles and wife executed
a mortgage to the defendants, which recited as follows:

" Whereas the said Austin Niles, in and by obligation, or
writing obligatory, under      hand and seal duly executed,
bearing even date herewith, stands bound unto the said sec-
ond parties in the sum of           lawful money of the
United States of America, conditioned for the payment of
all sums of money that said second parties have advanced or
may hereafter advance or secure for said Niles, with the in-
terest and costs, and for the keeping them harmless from
any loss or damage from the contract bearing even date
herewith, now this indenture witnesseth that the said A.
Niles and E. J. Niles, as well for and in consideration of the
aforesaid contract, and for the better securing the said par-
ties against loss from the same," have granted, etc.

The condition of the mortgage was that the first parties
should pay to the second parties "all damages and costs

from the above-mentioned contract." The mortgage was recorded March 29th, 1876.

Upon the trial before BROWN, P. J., plaintiff offered in evidence the above instruments. He then proved, by C. B. Fulton, cashier of the Sandy Lake Savings' Bank, it being admitted that if present he would so testify, that on the 22d of March, 1876, Austin Niles was indebted to the bank for borrowed money upon a number of notes; that on May 1st, 1876, the four notes were consolidated into one note, making $2166, and that, on May 8th, 1876, the last three notes were consolidated, and $500 additional borrowed by Niles the same day, making $1350; that William F. Porter signed the two last mentioned notes, one of $2166 and the other for $1350, as bail; that these notes were renewed from time to time, and the discount paid by Niles on the $1350 note up to the 17th day of February, 1878, and on the $2160 note to April 11th, 1878; that the amount of the discount paid by Niles was $751.10; and that on June 18th, 1880, William F. Porter, bail as aforesaid, paid the two notes then in judgment, debt, interest, and cost, amounting to $4011.22.

Counsel for plaintiff then called William F. Porter, the use plaintiff, and proposed to prove by him "that Austin Niles delivered to him the paper of 22d of March, 1876, and that in pursuance of such contract he went upon the paper of Mr. Niles, in the Sandy Lake Savings Bank, to the extent of $3500."

Counsel for defendant objected to the witness, being the use plaintiff, and Austin Niles being dead, as incompetent to prove anything by which the defendants might be affected in this suit, and incompetent to prove any declaration or action of Niles.

The Court, under exception, permitted him "to show simply that subsequent to the 22d of March the witness indorsed and became responsible for the obligations of Niles, and the objection sustained so far and overruled as to the other portion."

The witness testified that after March 22d, 1876, he signed, as bail for Niles, two notes amounting to about $3500, and that he afterwards paid upon them over $4000.

*E. G. Eberman*, for the defence, testified in substance:

I wrote this agreement at the request of Austin Niles. I never had any conversation with Mr. Perrine or Mr. Giebner, nor did Bailey, Niles, and I have any talk about the terms of this agreement, but only talked about getting Perrine, Giebner, Bailey, Niles, and myself together to see what we could do about the matter. I gave it to Niles to submit to the other parties mentioned in the contract, and we were to

get together to see if it was satisfactory. I never saw the contract since until to-day. I never had at any time a conversation with W. F. Porter, the use plaintiff, relative to this contract or the conditions of it. There was no agreement between me and Mr. Niles, or any other person, by which Niles was to give to W. F. Porter the article in evidence. I first learned that W. F. Porter had become security for Austin Niles within a year past, some time last fall or winter.

Upon cross-examination the witness said :

" I think I wrote the mortgage at the same time I wrote the article. My understanding was, in case we executed the paper, all of us, and delivered it, that we back-bail or secure Mr. Porter in case he bailed Mr. Niles, either by bond or agreement, executed with him or to him, to the amounts mentioned."

The witness also testified as to the conversation with Niles at the time the agreement was written as follows:

" Niles, T. S. Bailey, and myself had a conversation on the street a few days before the paper was written, at which time Niles said he wanted to get Perrine, Dr. Giebner and us together for the purpose of making some arrangement to give him assistance if he needed it. The day this paper was written, Mr. Niles said he could not get the parties together, and that he wanted me to write such a paper or agreement, as he proposed going on it with them so that they could see what he proposed doing. He said that he proposed assigning to us if we could agree a number of coal and land leases in Springfield township, this county, contracts for the purchase of a large lot of land in Sandy Lake and Worth townships, this county, and in Mineral township, Venango County, and some oil leases on Mill Creek and near Raymilton. After some conversation I wrote the first clause of the article, down to the description of the property to be assigned, and then learned from him that he had not the leases and contracts with him ; he told me that he had them at his home ; I told him that I could not make the paper as I intended, a full assignment, without having the papers themselves so that I could describe them in the article ; he said that I could then go on and refer to the contracts and leases in a general way, so that when he showed the papers to Bailey, Perrine, and Giebner, that they could see what he proposed to do, and if they were satisfied with his proposition, he would make an assignment on the articles and contracts to us ; he said he would go and see each one of them, and if they were satisfied with his proposition, we would all meet together and close the matter up—make some final arrangement. I then wrote on

[Bailey *et al. v.* Niles.]

the article, described in general terms the contracts, leases, and lands, as being the property he proposed giving the defendants. I then wrote at his dictation the latter part of the article, setting forth what he would assign to the defendants if his proposition was accepted. This paper I signed, and Niles took it away for the purpose, as agreed upon between us, of showing the other defendants his proposition to them, and he said that if the other defendants were satisfied with his proposition, that we would all get together, and he would assign them the contract and leases, and deliver them to us. I never saw any of the contracts or leases mentioned or spoken of by Niles."

*Daniel Perrine* for the defence testified in substance:

Niles said he would get the articles and leases together and get us together, and assign them over to us, and if he did not fulfil his agreement, his part of it, this article would not be binding on any of us, no one; that this article was a mere form to see what he could get the parties to do. He said this before I signed the article. It was a promise he made, as I was careful about it. He did not transfer to me or any of the defendants to my knowledge any of the leases. I did not understand we were to keep Porter clear. We were to come on back of Porter. My understanding of it was, if Porter wanted bail we were to go on with Porter. We were not to keep Porter clear, but merely to enable Porter to get the money, Porter being first liable and we afterward.

This testimony was substantially corroborated by T. S. Bailey and E. X. Giebner.

Defendant also introduced testimony to show that in 1875 Niles sent certain of the leases described in the contract to an agent with instructions to form a company and sell them, and that in 1877 Niles had cancelled one of these leases, and in 1880 assigned another.

Plaintiff in rebuttal read portions of the deposition of Niles testifying that he had permission from the defendants to sell the Riehel and Curry leases, that he was to take charge of the property, and that he managed it and advised with them up to April 1st, 1880.

Defendant presented certain points, which, so far as material, will be found in the charge.

The Court charged the jury, *inter alia*, as follows:

"The case has been tried and argued by the counsel on both sides without especial reference to the particular issue raised by the pleadings, and as if it were denied upon the part of the defendants that the writing given in evidence was executed. It has been tried as if the pleas were *non est factum*, covenants performed with leave, etc., and the Court will treat

[Bailey *et al. v.* Niles.]

it as the counsel on both sides have treated it, as if it were tried under those allegations. The plaintiff alleges that by the writing given in evidence, signed and sealed by the plaintiff and each of the defendants, and dated March 22d, 1876, the defendants, for the consideration expressed in the writing, obligated themselves to indemnify or secure William F. Porter against any loss he might sustain by reason of his becoming bail or surety for Austin Niles to an amount not exceeding $3500. That upon the faith of that agreement Porter did become security for Niles and did pay and sustain damage and loss, and that defendants are, by the express terms of the writing, bound to pay to Niles for the use of Porter the amount of damage and loss sustained, within the stipulated limits of $3500, which Porter has sustained by reason of his becoming such security.

" [Assuming now and for the present defendants deny that the writing dated March 22d, 1876, was intended by the parties to be obligatory from its date, provided Porter did become security for Niles and sustained loss thereby, then the construction of the writing, its legal import and the liability of the defendants in this suit, brought in the name of Niles as the legal plaintiff, are matters to be determined by the Court. And we go upon this assumption, that any want of definiteness in the description of interests in the leases and articles of agreement for the purchase of real estate which Niles transferred to the defendants as the consideration of their obligation to indemnify Porter, will not avail as a defence. In other words, the defendants are bound by their contract as expressed in the writing itself. And if the interest transferred to the defendants by the writing subsequently proved to be of but little value, this would not exempt defendants from the obligation to indemnify Porter, as the same is expressed in the writing.]

" If the writing became obligatory on the defendants from its date as before mentioned, which will be for you to determine, then we may safely infer from its terms that Niles expected the interests and property which he transferred to defendants would increase in value, speculative or otherwise, and from the evidence you may possibly believe that defendants had similar expectations, because you will observe by the writing that in a certain contingency, that is, the contingency that Niles himself should indemnify Porter, or pay the debt for which Porter became liable—then this property was to be retransferred, excepting certain interests which the defendants were to retain; but, be this as it may, the writing itself shows that Niles desired credit; that to obtain it he needed some one to become his security; that he ex-

[Bailey *et al.* v. Niles.]

pected William F. Porter to become such security; that defendants knew that he expected Porter to become his security, and knowing this fact, and in consideration of the property and interests transferred to them, they agreed to secure Porter from loss he might sustain by becoming such security, up to the sum of $3500.

" The writing bears its testimony that its purpose was to insure credit to Niles by defendants' agreement to indemnify Porter against loss in case he should become Niles's security. This being the deliberate written engagement of the defendants, I mean if you shall, under the instructions we shall presently give you, find that the writing was intended to be binding at its date, the defendants ought in some manner be compelled to comply with that engagement, to the extent that Porter has sustained loss within the limits mentioned in the article.

" [The defendants contend, that even if the writing became a valid contract as of its date, that Porter was no party to it, and hence that there can be no recovery in Niles's name for his benefit. The fact that Porter was not a party to the writing, we think, ought not to avail defendants. Having agreed with Niles to indemnify Porter, if Porter, in good faith and upon the faith of defendants' agreement, incurred liability for Niles, it occurs to us that even-handed justice requires them to do so.] But how shall they be compelled to comply with their agreement? Porter cannot, in his own name as legal plaintiff, bring suit upon the covenants contained in the writing of March 22d, 1876, because he is no party to it. He cannot maintain assumpsit against defendants, because they have received neither money nor property for his (Porter's) use, or to be paid over to him, and they hold neither money nor property as his trustee, and we are unable to think of any form of action in which he could maintain a suit in his own name against the defendants; and if this be so, the defendants would escape all liability, and Porter would be entirely without remedy unless his right to indemnity from the defendants may be enforced by this suit in the name of Niles, for his benefit. It is not, in our opinion, the case of an assignor of a chose in action, and indeed we attach no importance in this regard to the fact that Niles has assigned the writing to Porter. [The case is rather analogous to that of an agent who, either by prior parol authority or by subsequent parol ratification, enters into a contract in his own name, under his own seal, for the benefit of his principal, in which latter case the action upon a sealed instrument would be maintained in the name of the agent for the benefit of the principal, and in which the defendants, if they knew the

[Bailey *et al. v.* Niles.]

contract was for the benefit of the principal, who had not signed or sealed the paper, could take no other defence than such as would be available against such principal.]

" [We, therefore, with some doubts as to the correctness of our opinion, but which you are to take from us as the law of the case, instruct you that if you shall find that the writing of the 22d of March, 1876, was only signed by the parties defendant, whether they were all together at one time or not, or whether the writing was then dated or not, if it was intended to be a subsisting obligation when they should all have signed and sealed it, then we say the plaintiff can recover, provided that you turther find that upon the faith of that writing Porter did become security for Niles, and did honestly and in good faith incur liability therefor, which he has since paid.]

" On the part of the defendants it is claimed, that at the time when the several defendants attached their signatures and seals to the paper which bears date March 22d, 1876, it was understood and agreed between each of them and Niles that the writing should not be operative as an obligation against them until Niles should procure the leases, articles of agreement, etc., mentioned in the writing, and assign them to the defendants, and not until all of the defendants should meet together with Niles and consummate and perfect the agreement, and they say that it never was so consummated.

" Now, gentlemen, you have got the position of the case.

" Whether this writing ever had an existence or not, binding upon the parties, is a question of fact for the determination of the jury under the evidence; that is, whether it was ever delivered, or so far executed as to be intended by the parties to be presently binding upon them, that is a question of fact for the determination of the jury.

" If it was so executed and became operative as an instrument, what that instrument means, its interpretation, is a matter for the Court.

" Now, we say, if you find, what the defendants allege to be the fact, from the evidence in the case, that this writing never was intended by the parties to be obligatory until something further was done, then we say to you that the plaintiff cannot recover, because in that event the writing never had a legal existence, although it may have been signed, and in this connection we will read and affirmatively answer the defendants' second and fourth points.

*          *          *          *          *          *

" The defendants, in addition to the two points I have previously answered in connection with the statement of the

[Bailey *et al. v.* Niles.]

position of the defendants, present two other points, that I will now answer.

"'First: That as the present suit is an action of covenant on a contract, or supposed contract, between Austin Niles, the plaintiff, and the defendants for violation or breach of covenants contained in said contract, which was assigned to Porter, for whose use said suit is brought, the use plaintiff, Porter, has no other or greater rights under said contract than the legal plaintiff, Niles, and unless Niles could recover in said action Porter could not.'

"This point is answered in the affirmative, but in so answering it the attention of the jury is called to the instructions in the general charge, to the effect that this suit may be sustained in the name of Niles and for the benefit of Porter.

"Third point of defendants: 'That unless the jury find from the evidence that Niles acted as the agent of Porter, and informed the defendants of his agency, or that Porter communicated with defendants and was induced to or influenced by them to become bail for Niles, then the plaintiff cannot recover in this suit.'

"This point we answer in the negative, as we have already substantially answered the position taken in the general charge to the jury."

Defendants excepted to those portions of the charge within brackets, and to the answers to their first and third points.

March 15, 1881. Verdict for the plaintiff for $4190.38, upon which judgment was afterward entered.

Defendants took a writ of error, assigning as errors the portions of the charge within brackets, the answers to the first and third points, and the admission of the testimony of W. F. Porter.

*S. Griffith & Sons* and *S. H. Miller* for plaintiffs in error.

Under the pleas, the plaintiff was under the duty and necessity of proving his case affirmatively: Wilkinson *v.* Pittsburgh, F. & M. T. Co., 6 Barr, 398; Zents *v.* Legnard, 70 Penna. State, 192; Stewart *v.* Bedell, 79 Penna. State, 336; Troubat & Haly, vol. ii, p. 33; Reiter's Ex. *v.* Morton, P. L. J., vol. 11, p. 127.

There was no proof that Niles had performed his covenants, or delivered any of the leases or contracts. Porter, the use plaintiff, occupied the same position as Niles.

There is not one particle of evidence in the cause to show that Niles ever acted or pretended to act as the agent of Porter in this transaction, nor is there any evidence to show

[Garrison *v.* Paul.]

that the defendants knew or had any reason to believe or
suspect that Niles was so acting, or that Niles was author-
ized, either directly or indirectly, to deliver the paper to
Porter, either as the defendants' agent or otherwise. Nor
was there any evidence that during all the negotiations be-
tween Niles and the defendants, that such was the object
and purpose of the parties. The evidence shows that Niles
never delivered to defendants any of the leases or articles
spoken of in their contract.

The testimony of Porter was clearly incompetent as to
anything before the death of Niles.

This contract was a specialty, and Porter, the assignee,
takes the position of Niles, with no greater rights.

*Mason, Ziegler & Bowser* for defendant in error.

Niles having executed the contract assigning the leases
and a mortgage upon all his real estate, which the defend-
ants put on record, could have recovered from them. There
is a sufficient description in the contract to convey the
leases.

JANUARY 2, 1882.—PER CURIAM: We have carefully ex-
amined those parts of the charge of which the plaintiffs in
error complain, and think that the law of the case was cor-
rectly stated by the learned judge. If, on the faith of the
agreement executed by the defendants, Porter advanced the
money, they could not as against him set up that the con-
sideration was worthless or had not been received. The
article was expressed to be for his security. As to the com-
petency of Porter as a witness, whatever doubt might exist
as to that, the error is cured by the uncontradicted evidence
subsequently received by admission that Fulton, the cashier
of the Sandy Lake Savings Bank, would testify. Fulton,
beyond question, would have been a competent witness.

Judgment affirmed.